540 S.E.2d 464

**The STATE, Respondent,**

v.

**Danny McDONALD, Appellant.**

**No. 25225.**

Supreme Court of South Carolina.

Heard Sept. 19, 2000.
Decided Dec. 18, 2000.

Daniel L. Blake, of Hartsville, for appellant.

Attorney General Charles M. Condon, Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, Assistant Attorney General Derrick K. McFarland, all of Columbia; and Solicitor Jay E. Hodge, of Darlington, for respondent.

PLEICONES, Justice:

Appellant Danny McDonald ("Defendant") appeals his convictions of murder and attempted armed robbery in the death of Brock Hawkins. We reverse and remand.

## FACTUAL BACKGROUND

Brock Hawkins("Victim") and Olar Thorson ("Thorson") entered a residential area of Hartsville after dark on February 2, 1995. Thorson, who drove the vehicle, stopped alongside a group of men and asked directions to "Mitch's" house. According to Thorson's testimony, Defendant pointed to a residence a short distance up the street. Victim got out of the car and walked to the house, returning moments later after getting no answer at the door. Thorson remained in the car at all times. When Victim returned to the automobile, a number of men from the group gathered around the vehicle and one of them displayed crack cocaine to Thorson and Victim. Thorson testified that Defendant, who was not wearing a mask, approached the car from the rear, brandished a sawed-off shotgun and placed it to Thorson's head, demanding money from Thorson and Victim.[1] Victim pushed Thorson's head forward, into the steering wheel, and depressed the accelerator. A split second later the gun fired, striking Victim in the left side of the head and causing his death. Thorson put the car in gear and sped away.

A second eyewitness, Robert Jackson, testified for the State that Defendant carried the gun and fired the fatal shot. Jackson's testimony, in contrast to Thorson's, indicated that the shooter was wearing a black mask. Jackson's identification of Defendant was largely based on the clothing worn by the shooter. Both Thorson and Robert Jackson testified that Rodney McPhail ("McPhail") was present at the scene of the crime.

Defendant offered and the court admitted testimony from Timmy Jackson, also indicted in connection with the shooting,

---

1. Thorson made a statement to police shortly after the incident, but was unable to identify the shooter. Only after months had passed did he identify Defendant, a former high school classmate, as the shooter. Furthermore, Thorson did not identify the murder weapon as a sawed-off shotgun until months after the incident.

that immediately after hearing a gunshot he observed McPhail standing on the passenger's side of the vehicle holding a sawed-off shotgun.[2] Timmy Jackson further testified that Defendant was not present at the scene immediately after the shot was fired. The defense called McPhail to testify and McPhail asserted his Fifth Amendment[3] right against self-incrimination. Defense counsel then proffered testimony from Timmy Jackson that McPhail told Jackson he shot Victim because Victim would not part with his money. The court declined to admit this evidence, ruling it inadmissible hearsay.

The defense proffered testimony from two other witnesses, Michael Mungo ("Mungo") and Gary Hawkins ("Hawkins"). Mungo testified that while he and McPhail were both in custody at the Darlington County Detention Center, he over-heard McPhail tell an unidentified person that McPhail shot Victim and that Defendant was not involved in the incident. Hawkins would have testified that shortly after the incident McPhail admitted committing the offense, and that McPhail's stated reason for shooting Victim was that Victim would not pay McPhail for drugs. The trial court refused to admit the statements of Mungo and Hawkins on hearsay grounds.

Defendant was convicted of murder and attempted armed robbery. He received sentences of life imprisonment and ten years respectively. On appeal, he argues the trial court erred by refusing to admit the testimony of Timmy Jackson, Mungo, and Hawkins.

## LAW/ANALYSIS

The State argues that we cannot consider the issue of admissibility of the proffered testimony because it is not properly preserved for appellate review. We disagree and find the grounds for offering and admitting the testimony were apparent from the context of the proffer. *See* Rule 103(a)(2), SCRE, and Note to Rule 103(a)(2), SCRE.

---

2. McPhail was also charged with and indicted for murder in connection with this incident.

3. The Fifth Amendment provides in part that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself. . . ." U.S. Const. amend. V.

Defendant called McPhail, the out-of-court declarant, as a witness. McPhail invoked his Fifth Amendment right to silence. A witness who invokes his Fifth Amendment right to silence is unavailable for hearsay purposes. Rule 804(a)(1), SCRE; *State v. Doctor*, 306 S.C. 527, 413 S.E.2d 36 (1992). Defendant then proffered the testimony of Timmy Jackson, Mungo and Hawkins that on separate occasions, they each heard McPhail admit to the offense.

█ From the context of the proffers it is clear that the testimony was offered under the hearsay exception found in Rule 804(b)(3), SCRE. To bring the evidence within this exception, Defendant must show that the proffered statements were made by an unavailable declarant, that the statements exposed the declarant to criminal liability, and that corroborating circumstances clearly indicate the trustworthiness of the statements. McPhail's unavailability and potential criminal exposure are not in dispute. Thus, admissibility turns on clear corroboration.

This Court recently addressed a similar issue in *State v. Kinloch*, 338 S.C. 385, 526 S.E.2d 705 (2000). We declined to adopt a specific test to determine whether a statement has been sufficiently corroborated, deciding that the question should be left to the discretion of the trial judge "after considering the totality of the circumstances under which a declaration against penal interest was made." *Id.* at 391, 526 S.E.2d at 708 n. 5. We cited *Weinstein's Federal Evidence* (2nd ed.1999) for the proposition that "[R]ule [804(b)(3) ] does not require that *the information within the statement* be clearly corroborated, it means only that there be corroborating circumstances which clearly indicate the trustworthiness of the statement itself, i.e. that the statement was actually made." *Id.* at 389, 526 S.E.2d at 707 (emphasis in original).

It is true that in *Kinloch* we reviewed evidence corroborating not only the making of the statement, but also the truth of its content. We concluded that because "neither the making of the statement nor its truth were clearly corroborated, [there was] no abuse of discretion in exclusion of [the] testimony." *Id.* at 390–91, 526 S.E.2d at 708.[4]

---

4. The able trial judge did not have the benefit of our decision in *Kinloch* when presiding over this case. *Kinloch* was not decided until January 2000, while this case was tried in 1997.

■ We take this occasion to reiterate and emphasize that the corroboration requirement contained in Rule 804(b)(3) goes not to the truth of the statement's contents, but rather to the making of the statement. In many instances, it is not possible to separate these two considerations in analyzing the matter of corroboration.[5]

Defendant argues that the trustworthiness of the excluded testimony is clearly corroborated by the fact that three witnesses attest to having heard McPhail confess at three different times; by Timmy Jackson's testimony that he saw McPhail at the scene holding a sawed-off shotgun only seconds after hearing a gunshot; and by the contents of the statements themselves. He stresses that the statements were made shortly after the incident occurred and that one of the witnesses, Gary Hawkins, is McPhail's close friend.

We agree that the statements purportedly made by McPhail are clearly corroborated and should have been admitted at trial. According to Timmy Jackson's proffered testimony, McPhail told Timmy Jackson he shot Victim because Victim "wouldn't give up the money." Thorson testified the shooter demanded money from him and Victim immediately prior to firing the shot. The State's other eyewitness, Robert Jackson, testified that he heard someone demand money from Thorson and Victim just before the shooting. Evidence that the shooter demanded money also corroborates the proffered testimony of Gary Hawkins who would have testified that McPhail admitted to shooting Victim because Victim would not pay McPhail for drugs.[6] The content of the statements indicates that the speaker had extensive knowledge of details of the crime.

Additionally, the State's witnesses placed McPhail at the scene of the crime and defense witness Timmy Jackson testi-

---

5. We recognize that some of the evidence reviewed below tends to corroborate the truth of the statements, i.e. that McPhail actually shot Victim. As a practical matter the two inquiries are related, ordinarily requiring the trial court to examine the content of the statements as part of its analysis of the totality of the circumstances.

6. Thorson testified that one of the men around the car displayed crack cocaine, apparently offering to sell drugs to Victim and Thorson.

fied to seeing McPhail at the scene with a sawed-off shotgun just seconds after hearing a shotgun blast. Furthermore, three different witnesses claim to have heard McPhail make similar statements on three separate occasions.[7]

After consideration of these facts, we conclude the statements were sufficiently corroborated and, therefore, were admissible under Rule 804(b)(3). "[T]he admission of evidence is within the discretion of the trial court and will not be reversed by this Court absent an abuse of discretion." *State v. Smith,* 337 S.C. 27, 34, 522 S.E.2d 598, 601 (1999) (citing *State v. Nance,* 320 S.C. 501, 466 S.E.2d 349 (1996)). "An abuse of discretion occurs when the trial court's ruling is based on an error of law . . . ." *Clark v. Cantrell,* 339 S.C. 369, 389, 529 S.E.2d 528, 539 (2000). We find that the trial court committed an error of law when it refused to admit the testimony of Timmy Jackson, Mungo and Hawkins since the testimony came within a recognized exception to the hearsay rule. We further find that the error was prejudicial since the excluded evidence constituted non-cumulative support for Defendant's claim that he did not shoot Victim.

## CONCLUSION

Based on the foregoing, we REVERSE AND REMAND.

TOAL, C.J., MOORE, WALLER and BURNETT, JJ., concur.

---

7. This case is distinguishable from *State v. Forney,* 321 S.C. 353, 468 S.E.2d 641 (1996) where we held there was insufficient corroboration despite the fact that five witnesses claimed to have heard similar statements. In the instant case, unlike *Forney,* there is a wealth of corroboration independent of the multiplicity of hearsay witnesses. Additionally in *Forney,* the proffered out-of-court statements did not exculpate the accused.